```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x     10 Civ. 5838 (ILG) (LB)
FERNANDO MARRERO,
                              Plaintiff,

    - against -


R-WAY MOVING & STORAGE, LTD.,

                              Defendant.
------------------------------------------------------------------x
```

### DEFENDANT R-WAY'S REPLY MEMORANDUM OF LAW

Defendant R-Way Moving and Storage ("R-Way") submits this reply memorandum of law in further support of its motion for summary judgment dismissing the claims of Fernando Marrero against it in their entirety. Marrero makes two claims: hostile work environment and retaliation.

In his answering brief, Marrero describes in detail the nature of the verbal and other harassment to which he alleges he was subjected while he was employed by R-Way. He describes its purported severity and pervasiveness and he claims that 1) he regarded it as racial harassment and 2) when he complained to Chris Rooney about it, he told him he thought it was racial. He further claims that Chris Rooney retaliated against him for complaining about the harassment to which he was purportedly being subjected by not hiring him again to work part-time at R-Way as a mover.

Though R-Way denied all of the factual allegations underlying these claims in its Local Rule 56.1 Statement of Material Facts on Motion for Summary Judgment and in its other papers in support of its motion for summary judgment, none of them are at issue on this motion. As a matter of law, plaintiff has failed to allege the facts necessary to make out a prima facie case of either a hostile work environment or retaliation. Marrero has not alleged facts that support his

1

claim, assuming arguendo that he was harassed, that it was because of his race, nationality and/or the color of his skin. Nor has Marrero alleged facts that support his claim that the reason R-Way stopped calling him for part time work was in retaliation for his complaining about the harassment. Having failed to make out a prima facie claim for either a hostile environment or retaliation, R-Way is entitled to summary judgment dismissing the complaint.

I

### PLAINTIFF HAS FAILED TO ALLEGE A PRIMA FACIE CASE OF HOSTILE ENVIRONMENT

In an action for racial harassment or harassment because of one's nationality, the plaintiff has the burden of proving that the harassment occurred "because of the color of plaintiff's skin". Plaintiff's Memo p. 8. Plaintiff suggests in his papers that calling him a "monkey", something "less than human" is by itself enough to violate Title VII and the NYS Human Rights Law. However, it is not and the cases cited by plaintiff to not stand for this proposition. Plaintiff's Memo p. 11.

In *Spriggs v. Diamond Auto Glass*, 242 F. 3d 179 (4th Cir. 2001), the Court considered a claim for a racially hostile work environment in which the plaintiff was called "monkey" and a picture of a monkey was placed in a manual used by the plaintiff with the caption "so you will never forget who you are". There was, in this case, no question that the slurs were because of the plaintiff's race, because the plaintiff was African American and because in the same breathe the supervisor called the plaintiff a "monkey", he called him a "nigger".

Similarly, in *White v. BFI Waste Servs., LLC*, 375 F.3d 288(4th Cir. 2004), the Fourth Circuit affirmed its holding in *Spriggs*, that a string of racial invectives directed at African Americans, including the terms "monkey" and "nigger" can create an actionable hostile environment even if the invectives are not accompanied by physical threats. However, if the person called a monkey is not also called a "nigger" or any other demonstrably racial pejorative and isn't also African American, the word "monkey" has no racial content.

2

This case is much closer to the circumstances discussed in *Hayes v. Cablevision Sys. N.Y. City Corp.*, 2012 U.S. Dist. LEXIS 45622, (E.D.N.Y. Mar. 30, 2012.) In *Hayes*, plaintiff, an African American, was terminated by his employer, Cablevision. Hayes brought an action against Cablevision seeking relief under 42 U.S.C. § 1981 and Title VII. The plaintiff argued that the use of the term "thug" by one of his supervisors demonstrated the discriminatory animus. The Court observed:

> On its face, the term "thug" is race neutral. See, e.g., Random House Webster's College Dictionary (2d ed. 1997) ("a vicious criminal or ruffian.") No court in this Circuit has held that "thug" is a racial epithet sufficient to raise an inference of discrimination.

Id at 28

The Court stated that a racially neutral term could be evidence of discriminatory animus if it was uttered in an environment otherwise marked by abundant racial animus or under circumstances that made it clear that the term was intended to express racial antipathy. In the absence of any other evidence suggesting a racially hostile environment, the use of the term "thug" was not sufficient to create one. The Court held:

> In the absence of any other evidence suggesting a racially hostile environment, however, use of the term "thug" does not suffice to create one. See *White*, 2008, U.S. Dist. LEXIS 79002, at *14-15 (where the only evidence of discrimination was incident when defendant called plaintiff a "sick-minded woman" and plaintiff acknowledged that defendant did not reference her race or national origin in [*29] that or any other exchange, use of the insult "sick-minded woman" connoted no racial, ethnic, or even gender bias sufficient to give rise to an actionable Title VII claim).

Id.

In like manner, the use of the term "monkey" in the absence of other evidence suggesting that it was intended as a racial epithet will not support the conclusion that Marrero was subjected to a hostile environment "because of the color of his skin". Marrero cannot and does not say that he was ever called "nigger" or "spic" (Fernando Marrero Deposition, 45/2-25) or that other Hispanics who worked for R-Way were called nigger or "spic". Plaintiff himself

3

testified that he has never heard any of the other Hispanics or African Americans referred to as "monkeys". Indeed, one of the men who called Marrero "monkey" and engaged in the conduct which Marrero claims created the discriminatory hostile environment was himself Hispanic (R-Way Main Memo pg. 5). Where misconduct by one person is directed toward a person of the same race, there is a presumption that the misconduct is not motivated by race.

Nor, as a matter of law, does it help Marrero's cause that he thought he was being discriminated against. As the court in *Hayes,* again, observed where a similar claim was made,

> Nor are plaintiff's subjective feelings of humiliation at the Supervisors' Meeting, and his assertions of feeling like he was a "slave" and Connor was a "slave master" sufficient to raise an inference of discriminatory intent, absent any evidence of racial animus behind Connor's acts. "It is not enough that [plaintiff] sincerely believes that [she] was the subject of discrimination; 'a plaintiff is not entitled to a trial based on pure speculation, no matter how earnestly held.'" *Ali v. Mount Sinai Hosp.*, No. 92-6129, 1996 U.S. Dist. LEXIS 8079 at *22-23 (S.D.N.Y. June 12, 1996) (quoting *Fitzgerald v. Alleghany Corp.*, 904 F. Supp. 223, 230 (S.D.N.Y. 1995)). Connor's "mean, hostile" tone as alleged by plaintiff, does not support a claim of discrimination. It is well established that Title VII "does not set forth 'a general civility code for the American workplace.'" *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) [*38] and quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)); see also *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (citing cases instructing that "discourtesy or rudeness should not be confused with racial harassment.").

Id at 37

Under these circumstances, plaintiff cannot be said to have proffered any evidence from which the inference of discrimination necessary to make out a prima facie case for a hostile environment can be drawn. See *Hayes*, Id at 20-21. R-Way is entitled to summary judgment dismissing Marrero's claim that he was subjected to a hostile environment because of the "color of his skin."

## II
## MARRERO CLAIM FOR RETALIATION
## FAILS AS WELL

In its Main Brief, R-Way argued that there is a no causal connection between Marrero's complaint to Chris Rooney and Rooney's failure to contact him following the April 19th meeting (R-Way Main Memo p. 7-11). R-Way offered as evidence of the lack of causation that on the three previous occasions, Marrero claims to have complained about being called "monkey" to Chris Rooney, (Egan Aff. Exhibit 1, Marrero Deposition Transcript 51/14-52/5, 87/7-88/15, 88/16-90/21) and that on those occasions, Marrero did not allege there was a reduction in the amount of work for which he was hired. Rather, he argues in his brief that on the prior occasions that Marrero had complained, he, Rooney, made a "conscious decision not to act" (Plaintiff's Memo p. 16) but that when on April 19, Marrero threatened to sue, Rooney decided not to call Marrero any more. This assertion is completely speculative and, notwithstanding the quotations from the transcript of the April 19 meeting, without any evidentiary support at all.

In the absence of any evidence supporting his claim that the requisite causal connection exists, Marrero is forced to rely on whatever inference can be drawn from the temporal proximity between the protected act and the adverse employment action. R-Way suggests that, because of the substance of the conversation on April 19th, no inference of causality can be drawn.

In the conversation between Marrero and Rooney, Marrero himself suggests at least one reason why Rooney stopped using Marrero: because he was mad about Marrero not coming into work one Saturday when he was expected. Another reason, and the actual reason that Rooney stopped calling Marrero was because he understood that Marrero quit. Marrero told him he was not coming back to work (Egan Aff. Exhibit 1 Marrero Tr.. 6/14-15). No inference of discrimination can be drawn from either of these completely non discriminatory reasons for failing to call Marrero again after the April 19 meeting.

5

Marrero turns next to the question of whether, assuming Marrero has made out a prima facie case, R-Way had legitimate business reasons for not calling Marrero. The legitimate business reasons offered by R-Way were that business was slow and that in any event, Marrero was far enough down on the seniority list so that he would not be assigned the first work in the door (Rooney Aff. ¶19). Marrero argues that there are questions of fact with respect to the legitimate business reasons R-Way stopped calling Marrero.

The possibility that there may be questions of fact about R-Way's legitimate business reasons does not defeat a motion for summary judgment. As the Court observed in *Hayes*,

> Even assuming, *arguendo*, that plaintiff had established a *prima facie* case, defendant would still prevail because they have established that they had a legitimate reason for terminating plaintiff and plaintiff cannot establish that the reasons were pretext for discriminatory [*41] animus. At this stage, defendant's burden is "one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). **Defendants need not prove non-discrimination at this stage; instead, they must "introduce evidence which, *taken as true*, would *permit* the conclusion that there was a non-discriminatory reason for the adverse action."** *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis added).

Id at 40.

Thus, the issue for this Court is not whether Marrero has raised a question of fact about R-Way's legitimate business reasons for no longer employing Marrero following the April 19th meeting, but whether Marrero has offered

> 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered ... were false, and that more likely than not discrimination was the real reason for the employment action." *Dixon v. Int'l Fedn. of Accountants*, No. 09-2839, 2010 U.S. Dist. LEXIS 35348 at *18 (S.D.N.Y. Apr. 9, 2010) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) [*42] (internal citations and quotations omitted)).

Id at 41

The first and most important business reason for not calling Marrero after April 19th, is that Rooney thought Marrero had quit. He thought so because Marrero told him this was his last day (Rooney Aff. ¶19). Marrero does not address this business reason in his answering papers.

With regard to the second business reason, that business was slow, plaintiff offers no proof. Rather, he claims that R-Way will not be able to prove that business was slower (Plaintiff's Memo p. 14 ). This is clearly not evidence that this business reason was false or that more than likely, discrimination was the real reason for not calling Marrero.

With regard to the third business reason, that Marrero was junior in seniority to other part time workers at R-Way and would not be called ahead of those more senior than himself, Marrero points out there is a conflict in Mr. Rooney testimony on this subject between his deposition and what he is recorded saying at the April 19th meeting (Plaintiff's Memo p. 14-15) . In one, Rooney said that Marrero was senior to "Boner" and J Keenan and in the other, he said they were not. But missing from the memorandum and as well from Marrero's affidavit in opposition to R-Way's motion is any proof that Rooney actually called "Boner" or "J. Keenan" to work on a day ahead of Marrero. There is no question Marrero thought Rooney was calling part time workers with less seniority than he ahead of him but there is absolutely no proof that Rooney did. This cannot be said to be sufficient evidence to permit a rational finder of fact that the legitimate business reasons offered were false or a pretext for discrimination.

Defendant R-Way is entitled to summary judgment dismissing Marrero's claim for retaliation.

## CONCLUSION

For all the foregoing reasons and those set forth in movant R-Way's main memorandum and supporting affidavit and exhibits, R-Way's motion for summary judgment dismissing plaintiff's claims in their entirety should be granted.

Dated: New York, New York
      May 18, 2012

Yours, etc.

EGAN LAW FIRM

_____
By: Susan B. Egan (SE2554)
Attorneys for Defendant
805 Third Avenue
New York, New York 10022
(212) 619-8456